CHARLES C. JENKINS v. LAWRENCE HANSON and Another.[1]

June 7, 1907.

Nos. 15,291—(208).

**Sale of Land by Village—Injunction.**

A railroad company deeded a part of its abandoned right of way to defendant village, which, having formally accepted the grant, proposed to sell it to another defendant. Plaintiff, the owner of property facing on the land, sought to enjoin the sale of part of it by defendant village and its improvement by defendant purchaser. It is *held* (1) that the village had a right, under section 767, R. L. 1905, to accept the grant and to sell the part proposed; (2) the plaintiff sustained no special injury.

Action in the district court for Blue Earth county to enjoin defendants from interfering with certain real estate in the Village of Lake Crystal. The case was tried before Lorin Cray, J., who found in favor of defendants. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Pfau & Pfau* and *C. J. Laurisch,* for appellant.

*S. B. Wilson,* for respondents.

JAGGARD, J.

Plaintiff and appellant sought to enjoin the defendant and respondent village from platting or in any manner disposing of certain premises and the defendant Hanson from making an excavation or erecting any buildings thereon. The court found the facts for the defendant and dismissed the action. This appeal was taken from an order of the court denying a motion for a new trial.

The plaintiff owned a lot separated by a street or alley from the southerly limits of a tract of land which will be referred to as "lot 2." Lot 2, a part of an old railroad right of way, had been deeded to the defendant village "in consideration of the right of way across the streets, alleys, and public grounds in another part of the defendant's village." Plaintiff contends that a proper construction of the relevant statutory provisions either forbids the acquisition of the title by the

[1]Reported in 112 N. W. 216.

village or restricts it to receiving it for some of the following purposes: "Streets, alleys, market places, public squares, hospitals, city halls, lockups, etc., and for the purpose it was being used by the public at the time when the grant was made;" that the railway company conveyed nothing to the village, because it had no fee to the land, but only an easement of way; and that the fee, upon the abandonment, reverted to the original owners. If the defendant railroad company could convey nothing, plaintiff was entitled to no relief; for the village neither received nor could transfer anything. If the village had no power to accept the gift, its conveyance would be void, and the injunction, if granted, would be against a shadow. If the village could receive title, and could convey, then plaintiff would be entitled to no relief; for it would be in the exercise of a legal right. Finally (1) if the village could receive, and could not sell, but undertook in violation of law so to do, and plaintiff (2) would suffer as a consequence of such improper conduct a particularized injury, different from that which he would experience in common with every other member of the community, he would be entitled to raise the question.

1. We think the village could and did receive what interest the railroad company could convey. The village is subject to the ordinary common-law restrictions upon the exercise of such powers to such only as the legislative grant, reasonably construed, may have conferred. Section 1, c. 21, p. 82, Sp. Laws 1876, prohibits it from receiving or holding real property, except only such property as is necessary for village purposes. Section 767, R. L. 1905, provides:

> Any city or village may accept a grant or devise of real property situated within its limits, and of personal property for improving and equipping the same, and may maintain and administer such property for the benefit of its citizens, in accordance with the terms prescribed by the donor: Provided, that nothing herein shall authorize such acceptance or use for religious or sectarian purposes. Every such acceptance shall be by resolution of the council adopted by a two-thirds majority of its members, expressing such terms in full.

There had been a full and formal acceptance by resolution in this case.

We think, also, that the village could sell what interest it had received. Inasmuch as no express terms were prescribed by the donor, the village might administer the property for what the law would prescribe as the proper uses. It could not, of course, "go into the real estate business"; but, there being no restriction upon the grant, it might dispose of the land "for the benefit of its citizens." A well-grounded doubt has been suggested whether public welfare would permit gift property, pure and simple, to be sold by a city or village in order that the proceeds might be appropriated directly and for the sole purpose of reducing taxes, because the result of such disposition would be the practical destruction of the gift and its present distribution among a limited class of citizens. That question is not fairly presented by the record. We do not determine it. Nothing has been called to our attention inconsistent with the right of the village to sell the property. It will be time enough to consider questions as to disposition of proceeds upon their due presentation.

2. The finding of the trial court that plaintiff did not suffer such special injuries as were sufficient to entitle him to equitable relief here sought was proper. Not only was no special injury shown, but no injury at all; for it follows, from the holding that the village could acquire and sell what interest it received, that plaintiff's damages, conceding them to have existed, must have been absque injuria.

Order affirmed.

ELLIOTT, J.

I concur in the conclusion, on the ground that the plaintiff did not suffer such special damage as entitled him to maintain the action.