[No. 10765.  Department Two.  May 14, 1913.]

W. D. GERARD et al., *Appellants*, v. THE CITY OF SEATTLE et al., *Respondents*.[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—AGREEMENT TO PAY ASSESSMENT—MUTUALITY.  An agreement by property owners to pay for an improvement, the assessment for which had been declared invalid, is not void for want of mutuality, although it did not compel the city to complete the work, where the work had been stopped on account of the invalidity of the assessment and was resumed on the faith of the contract and completed without any notice of withdrawal from the contract.

SAME—AGREEMENT TO PAY ASSESSMENTS—CONSIDERATION.  Such an agreement is not void for want of consideration, on the theory that the city and contractor were bound to complete the work, since the failure of the assessments relieved the contractor from performing.

SAME — AGREEMENT TO PAY ASSESSMENTS — CONSTRUCTION.  An agreement by property owners to pay for an improvement by the "front foot as defined by the city charter," authorizes a computation by the actual frontage on the street plus the "lateral" frontage upon the ratio required by the city charter in making assessments to the center of the block for lateral streets.

SAME.  Under an agreement by property owners to pay for assessments to be levied for an improvement "in ten annual installments in like manner" as the original assessment, which had been held invalid and three installments of which were past due, the assessment should be made for ten installments falling due at the time fixed in the original assessments, and three of which were due, instead of seven assessments covering the unexpired period.

Appeal from a judgment of the superior court for King county, Albertson, J., entered June 5, 1912, in favor of the defendants, after a trial on the merits before the court, in an action to cancel an assessment for a local improvement.  Reversed.

[1]Reported in 132 Pac. 227.

*Murphy & Wall* and *James B. Murphy* (*L. C. Kells*, of counsel), for appellants.

*James E. Bradford, Howard A. Hanson, Turner & Hartge,* and *Preston & Thorgrimson,* for respondents.

FULLERTON, J.—The appellants' property, with other property similarly situated, was assessed to pay the cost of regrading Jackson street, in the city of Seattle, after it had been adjudged in condemnation proceedings to be damaged by the regrade in excess of the benefits conferred on it thereby. On the appeal of a party whose property was assessed under like circumstances, this court adjudged the assessment invalid. *Schuchard v. Seattle,* 51 Wash. 41, 97 Pac. 1106. The effect of the decision was to render uncollectible on the original roll assessments exceeding in amount $175,000. Thereafter, at the suit of the appellants and others of the property holders, the assessments levied upon their specific tracts were canceled. The contractors who had entered upon the performance of the work thereupon ceased operations, and ways and means were sought by which the work could be completed. The matter was taken up by the property holders of the assessment district, and after some negotiation, a large part of the deficiency was made up by increased assessments on property benefited, by voluntary payments, and by contributions from the general fund of the city, so that the remaining deficiency was something less than $62,000. To meet this deficiency, the following agreement was entered into by the city and certain of the property holders:

"Whereas, heretofore, the city of Seattle, upon the filing of a property owners' majority petition, passed Ordinance No. 13309 providing for the improvement of Jackson street and other streets in the city of Seattle by grading and regrading the same, and thereafter, pursuant to said ordinance, said city of Seattle let a contract to Lewis & Wiley, Inc., to perform the work required thereby and levied assessments on the

property found by the city council of said city of Seattle to be benefited by such improvement; and

"Whereas, the supreme court of the state of Washington has held that certain property could not be assessed for said improvement because the same was found by the judgment of the court in cause No. 50960 of the superior court of the state of Washington, in and for King county, to be damaged by said improvement instead of benefited, and have also held that the exemption from assessment applied to certain property of certain persons who signed the said petition; and

"Whereas, the validity of all assessments made upon property in the district against property found in said cause No. 50960 to have been damaged is, in view of said decision, at least questionable; and

"Whereas, a deficiency in the fund provided by the said assessments to pay for said work in a greater or less sum will necessarily exist unless some steps are taken to make good such deficiency, and by reason of such deficiency and the uncertainty of the manner in which, and the time when, the same shall be made good, and the litigation which is likely to result from the attempts of the city of Seattle to enforce the said questionable assessments or to make reassessments to provide funds to complete the said improvement and to pay for the same, annoyance and delay will be suffered by the undersigned property owners, unless such deficiency is promptly provided for; and

"Whereas, by permission of the board of public works of the said city of Seattle the said contractor has ceased work temporarily pending some arrangement for providing said funds, and all of the undersigned property owners are very desirous to have said improvement completed as soon as possible; and

"Whereas, said property owners will be financially very much benefited by the prompt completion thereof;

"Now, therefore, in consideration of the premises and of the mutual promises of all those who shall sign this instrument, or any manifold copy thereof (all of the said signed copies to be considered as one instrument, and all signatures to have the written approval of the committee hereinafter named, or a majority of them), the said undersigned do hereby agree with each other and the city of Seattle as follows, to wit:

"(1)   That in any action or proceeding for the collection of assessments heretofore made for the cost of the said improvement upon the property described after the respective signatures of the parties hereto, if reduced as herein provided, or in any action or proceeding for the reassessment of their said property as herein provided, or for the collection thereof, or in any action involving the validity of said assessment if so reduced, or said reassessment if made, they will not set up as a defense or urge as a prior adjudication the judgment in said improvement.

"(2)   That their said property is in fact benefited six dollars ($6) per front foot (as defined by the city charter) in addition to benefits allowed in the said condemnation suit, and that they do now hereby waive all objections to the validity of the assessment made against their respective property to the extent of six dollars ($6) per front foot, said waiver to become effective whenever the city of Seattle shall pass an ordinance remitting that portion of the assessment in excess of six dollars ($6) per front foot, and said property owners hereby agree to pay the said assessment when so reduced or any reassessment which may be made in lieu of the said original assessment to the amount of six dollars ($6) per front foot; Provided, that said reassessment, if made, shall provide for payment in ten annual installments in like manner as the said original assessment.

"(3)   This agreement shall be binding upon the signers hereof and their respective properties when the same is filed with the city clerk of the city of Seattle, such filing to be made by said committee of the property owners when said committee is satisfied from assurances from the said contractor, or otherwise, that the work will be completed without further assessment therefor on the said property of the signers hereof.   The committee herein referred to consists of the following persons:   G. O. Guy, L. H. Griffith, Edmund Bowden, M. B. Jackson and Samuel Ritter.

"Dated Seattle, Washington, January fourteenth, A. D. 1909."

The agreement was signed by the appellants, and subsequently filed with the city clerk of the city of Seattle by the members of the property owners' committee named therein..

Thereafter work was resumed by the contractors and the regrade completed.

The city of Seattle thereupon passed an ordinance canceling all that part of the assessment appearing upon the original roll against the signers of the petition in excess of $6 per front foot, except as to the property of eight of the number. As to these eight properties, of which the appellants' property was one, judgment had been rendered in the superior court, as hereinbefore stated, canceling the assessment levied thereon, and the city in levying a supplemental assessment, included in the roll an assessment against these properties in the amount thought to be authorized by the terms of the agreements.

The appellants' lot is 50x120 feet in size, and the assessment levied against it is $479.38. It fronts fifty feet on King street, one of the improved streets included in the regrade, and is the third lot in the block easterly from Tenth avenue, another of such improved streets. The assessment was made "payable in seven annual installments, the first of which shall be due and payable on or before December 7, 1911, and one installment annually thereafter until all shall have become due." The present action was brought by the appellants to cancel the assessment on the ground that it is invalid. Judgment went against appellants in the court below, and they have appealed.

It is the appellants' first contention that the agreement is invalid for want of consideration. We shall not follow in detail the appellants' argument on the question. The principal objections suggested are two, namely, that the contract lacks mutuality for want of a binding obligation on the part of the city, and because the city was obligated to complete the work regardless of any promise made by the appellants. But neither of these objections appears to us to be tenable. The work was stopped when the appellants signed the agreement, and on the faith of their promises and that of others, was afterwards resumed and carried to completion. If there was

no promise contained in the agreement on the part of the city to complete the work, the appellants could have perhaps withdrawn from the agreement by giving proper notice prior to the resumption of the work; but clearly they cannot wait until after the work is completed and claim exemption because the city did not expressly promise to do the work.

The second reason is to our minds equally fallacious. We cannot agree with the assumption that there was a binding obligation between the city and the contractor by which the contractor was compelled to complete the work regardless of whether this deficiency in the fund was made good or not. The contractor's promise was based on the promise that he would be paid a fixed sum for his work. This was the consideration for his contract. If subsequent to making the contract this consideration failed, or became impossible of performance, the obligation of the contract likewise failed, and performance could no longer be enforced against the contractor. The promise of the appellants, therefore, was based on a valuable consideration and can be enforced against them.

It is next claimed that the assessment is void because not made in accordance with the agreement. It is claimed that it is levied for more than six dollars per front foot. The agreement, it will be observed, allowed an assessment of "six dollars ($6) per front foot as defined by the city charter," while the assessment was made for $479.38, or considerably more than six dollars per front foot, if the actual frontage of the property on King street alone is to be taken as the factor in calculating the amount due. It is shown, however, that, under the city charter, all lots in blocks have for the purposes of assessment two frontages, that is, frontage upon two different streets, one the actual frontage, and the other upon the side street nearest to which they lie. In other words, all assessments run back to the middle of the block, regardless of the fact whether the lots face on that street or lie parallel to it, and whether they are under the same owner-

ship or not. In making assessments for these lateral streets, however, different ratios are used. The charter provides that the first thirty feet shall bear one rate of assessment, the second thirty feet a lesser rate, the third thirty feet a still less rate, and the remainder to the center of block the least of all. This lot was assessed for its frontage on King street (its actual frontage) at the rate of six dollars per front foot, and for its frontage on Tenth avenue (its lateral frontage) at the ratio provided in the city charter. This, we think, was in accordance with the agreement.

Finally, it is said that the assessment is void because made payable in seven annual installments instead of ten, as provided for in the agreement, and is for a larger sum than six dollars per front foot, calculated on the basis contended for by the city. The agreement, it will be noticed, provided "that said assessment, if made, shall provide for payment in ten annual installments in like manner as said original assessment." At the time the assessment on the appellants' property was made, three installments were due on the original assessment. The city construed the agreement, we think correctly, to mean that the installments on the new assessment were required to be made to fall due at the same time they fell due on the original assessment, but instead of dividing the assessment in ten annual installments and calling three of them due, as it should have done, it divided the whole sum into seven annual installments and provided that the first one should fall due on the day the fourth installment on the original assessment fell due, and the remaining six with the six remaining of the original assessment. Seemingly, also, there was an error made in calculating the amount due. The mistakes in these particulars, however, do not require a holding that the assessment is void. They are errors merely which may be corrected on the assessment roll.

The judgment appealed from is therefore reversed, and remanded with instructions to modify the judgment by directing the corrections above indicated to be made. The amount

due being a question of pure mathematics, the trial judge may take the advice of an expert in determining it, if he so desires.

CROW, C. J., MAIN, ELLIS, and MORRIS, JJ., concur.